· John C. Palmer *vs.* The Inhabitants of Andover.
Walter M. Mason *vs.* Same.
Edward B. Dealing *vs.* Same.
George L. Winslow *vs.* Same.

In an action against a town, to recover damages for an injury, alleged to have been caused by a defect in a highway, occasioned by the want of a rail or barrier, the town will be liable therefor, if such rail or barrier were necessary for the proper security of travellers, and would have prevented the happening of the injury complained of.

A town is liable for an injury occasioned by a defect in a highway, where the primary cause of the injury is a pure accident, as, for example, the failure of some

part of a carriage or harness; provided the accident occur without the fault or negligence of the party injured, and be one which common prudence and sagacity could not have foreseen and provided against; and provided, also, that the injury would not have been sustained but for the defect in the highway.

THESE were actions on the case, brought by the respective plaintiffs against the defendants, to recover damages for injuries severally sustained by the former, through an alleged defect in a public highway in Andover, by means and in consequence of one and the same accident. The first named cause was tried in this court, at the April term thereof, 1847, before *Shaw,* C. J., from whose report of the case it appeared as follows : —

There was evidence tending to prove, that the four plaintiffs, all belonging to Lowell, engaged a carriage, being a carryall or covered pleasure wagon, and a pair of horses, at a livery stable in Lowell, kept by Thomas S. Farnsworth, and on a Saturday afternoon in August, 1845, rode together in the carriage so hired from Lowell to Andover, and returned the same evening, and that the accident complained of occurred in Andover : That the plaintiffs passed a bridge over the Shawshine River, at a place called Ballard Vale, and then up a steep and long hill, and subsequently and very soon after, returned down the same hill ; that the hill was rather steep, and the road down it narrow ; that in descending towards the bridge and at a few rods distant there was a considerable bend or angle in the way, at which the road turned to the right, in order to go over the bridge ; that by keeping straight forward or to the left, instead of turning to the right, the course would bear, at or near to the left side of the road, to a perpendicular wall, three or four feet high, which formed an embankment against a mill pond raised by a dam over the Shawshine ; and that there was no rail or barrier upon that wall to direct or protect travellers : That as the carriage driven by the plaintiffs was coming down the hill somewhat rapidly, a nut screwed to the end of a bolt loosened and came off, which bolt attached the pole with the traces and other harness of the horses to the carriage ; that when the

out thus fell, the bolt drew out; that the pole with the harness thus became entirely detached and separated from the carriage; that thereupon the horses turned to the right, at the bend or angle of the road before mentioned, followed the travelled part of the road and went over the bridge, whilst the carriage thus detached kept nearly straight forward, passing thereby to the left of the travelled part of the road, and ran to and over the wall before described, and fell into the mill pond, by means of which, the persons in the carriage, the plaintiffs, were wet and sustained other damage.

The alleged defect in the highway, as set forth in the plaintiff's declaration, and relied upon in making out a case against the defendants, was the want of a guard or barrier, at or near the side of the way and upon or near the wall, at the side of the mill pond at the left of the road, which would have prevented the carriage from running off in that direction and falling into the pond.

There was evidence tending to show, that the nut and screw which secured the bolt connecting the pole and draft to the carriage were loose and insufficient, when the carriage left the stable, but there was no evidence to show that the plaintiffs knew this, if it was so, or had any cause to believe or suspect it.

The judge was thereupon requested to rule and instruct the jury, that if the plaintiffs were travelling in a hired carriage, obtained at a respectable livery stable, where they had reason to expect a good and safe carriage, and did not know or have reason to believe, that the carriage hired by them was defective, they were free from all blame or negligence, and though the accident was attributable partly to the defect in the carriage, still they would have a right to recover against the defendants.

The judge declined so to instruct the jury, but proposed to instruct them, that if the screw was too loose and thereby insufficient and unsafe, and the accident arose in whole or in part from that cause, although the carriage was a hired one, and although the defect was unknown to the plaintiffs, and

they were chargeable with no fault or negligence respecting it, still they were not entitled to recover in this action against the defendants.

Upon the more general question, arising on the case as hereinbefore stated, the judge proposed to rule and instruct the jury, that if an accident happened to the carriage, on a part of the highway which was not defective, or was not occasioned by any defect in the highway, in consequence of which accident the horses were separated and detached from the carriage, and the driver ceased to have any control over the motions of the carriage, and damage ensued, if this arose from any defect in the carriage or tackling, the defendants were not liable; and, further, if the bolt was drawn, and the carriage separated, by pure accident, without fault or negligence imputable to any body, upon a part of the highway not defective, and, in consequence of this accident thus occurring, the horses were separated from the carriage, and the carriage ceasing to be under the direction or control of the driver, by the impetus already acquired, ran out of the travelled part of the road to the left, over the wall and into the pond, and the damage was thereby occasioned, it was a damage for which the defendants were not liable; that supposing the want of a rail or barrier, upon the wall and against the pond, was a defect, and that there ought to have been such a rail or barrier, to direct and secure persons travelling on the road in the night and at other times, still the want of such rail or barrier, in the case supposed, would not be the immediate and efficient cause of the damage complained of; it would be only an incidental or remote consequence of the accident, which occurred on an unexceptionable part of the highway; and, therefore, that in the case supposed, the want of such rail or barrier was not a defect, which would render the defendants liable in these actions.

The plaintiff, thereupon, in the case on trial, and the plaintiffs in the other above entitled cases, depending on the same facts, became nonsuit, subject to the opinion of the whole court upon the above directions. If these directions were

incorrect, the nonsuits are to be set aside and new trials granted.

*J. G. Abbott,* for the plaintiffs.

*R. Choate,* for the defendants.

DEWEY, J. Upon a careful review of the various adjudications, bearing upon the question of the liability of towns for damages sustained by travellers upon the public roads, a majority of the court are of opinion, that the nonsuits in the present cases should be taken off, and the cases submitted to a jury, under instructions somewhat different from those proposed to be given at the trial.

A brief reference to the authorities will, I think, clearly show, that the principles, which have been adopted and sanctioned by judicial decisions, require nothing further of the plaintiff than to prove ordinary care and diligence on his part, in all that appertains to himself and his manner of travelling, at the time of receiving the injury ; that the road was defective and out of repair, so much so and for such a length of time, as to show the town in legal fault as to such defect ; and the further fact, that the injury would not have been sustained, if the town had not so permitted their road to be out of repair.

The proposed rulings, brought before the court by the report in the present case, as it seems to us, go somewhat further, and the inquiry is, whether they can be sustained to their full extent.

In the case of *Butterfield* v. *Forrester,* 11 East, 60, always cited as a leading case upon this subject, the principle settled was, that the party seeking to recover damages, by reason of an obstruction placed on the public way, must have been in the exercise of ordinary care and prudence to avoid injury thereby, or he cannot recover. That case recognized the principle which I have stated, and went no further. " Two things," says lord Ellenborough, C. J., " must concur to support the action ; an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

It had been originally made a question, whether he who encumbers the highway unlawfully should not be made answerable for any direct damage which happened to any one who was injured thereby, whether the person thus injured was in the use of proper care or not; and this doctrine was supposed to receive some countenance from Buller's Nisi Prius, 26. The case of *Butterfield* v. *Forrester* fully settled that point, and as an authority has never been questioned.

The case of *Flower* v. *Adam*, 2 Taunt. 314, does not settle any principle beyond this, that if the proximate cause of damage be the unskilfulness of the driver, although the primary cause be the misfeasance of the defendant, the plaintiff cannot recover. The grounds of the decision are, however, very briefly stated, and it is somewhat difficult to understand precisely its extent.

The case of *Smith* v. *Smith*, 2 Pick. 621, was an action instituted to recover damages for an injury to the plaintiff from an obstruction in the highway; and the plaintiff alleged, that the defendant unlawfully placed upon the highway a pile of wood, by reason of which the horse of the plaintiff received an injury; and it was contended, that the defendant was responsible for all direct damages caused by his illegal acts, although the plaintiff was in some degree wanting in ordinary care; but the court held that the plaintiff could not recover, if it appeared that he did not use ordinary care to avoid the obstruction. The case of *Lane* v. *Crombie*, 12 Pick. 177, merely reaffirmed the doctrine of the case of *Smith* v. *Smith*, last cited.

The preceding were all cases of actions against individuals for obstructions placed in the public ways; but they have ever been considered as equally illustrative of the principles which are to be applied to actions to recover damages of towns, for injuries occasioned by their neglect in maintaining and keeping in a proper state of repair the public roads.

The case of *Thompson* v. *Bridgewater*, 7 Pick. 188, sanctioned the principle above stated, that ordinary care was requisite on the part of the plaintiff, to entitle him to recover,

51 *

obviously limiting it to what might be strictly termed ordinary care and prudence, and not requiring the party "to look far ahead for obstructions or defects which ought not to be suffered to exist." This case clearly did not enlarge the grounds of defence beyond the care previously referred to, and gave no sanction to any instructions as to any duty devolving upon the plaintiff beyond ordinary care and diligence, or authorized or required any thing beyond that as a condition precedent to the right of recovery, where the road was shown to be defective and in want of repair.

The case of *Howard* v. *North Bridgewater*, 16 Pick. 189, is supposed, however, by the counsel for the defendants to extend the grounds of defence in cases of this nature beyond the mere question of want of ordinary care, and to authorize the further instructions that were proposed to be given at the trial before the jury. This case, it must be admitted, does fully sustain the position, that there may be cases of injury received by travellers arising directly from obstructions within the limits of the located highway, and where the plaintiff was not wanting in ordinary care and diligence, or, in other words, where there was no negligence on his part, and yet he may not be entitled to recover damages of the town. To this extent it is certainly a strong case for the defendants. But it is to be remarked, that that case differed materially from the present in one respect. The facts there presented a case where the defect in the road, which was the cause of the injury to the plaintiff, was not one rendering it so far out of repair as to be the subject of an indictment. The opinion of the court, given in favor of the defendants in that case, is placed directly upon the ground, that no defect in the road existed in reference to the public travel. The only question was, whether it was such a defect as to subject the town to an indictment therefor ; if so, it was held, that the party receiving the injury would be entitled to recover; if otherwise, the town would not be liable.

The proposed instructions to the jury, in these cases, were not thus restricted. They were, " that, supposing the want

of a rail or barrier upon the wall and against the pond was a defect, and that there ought to have been such a rail or barrier, to direct and secure persons travelling on the road in the night or at other times, still the want of such a barrier, in the case supposed, would not be the immediate and efficient cause of the damage complained of; it would be only an incidental or remote consequence of the accident, which occurred on an unexceptionable part of the highway; and, therefore, that, in the case supposed, the want of such rail or barrier was not a defect which would render the town liable in these actions."

So far as this defence is placed upon the ground, that the pole and harness became detached from the carriage, on a part of the highway which was not defective, and, in consequence thereof, the carriage passed out of the travelled part of the road, and the injury for which the damages are claimed occurred by reason of a want of railing at such place, without the ordinary travelled road, the court are of opinion, that the jury should have been instructed to inquire whether the want of such rail or barrier was a defect, and whether there ought to have been such a rail or barrier, for the proper security of persons travelling on this road; and if so, then the neglect of the town to keep up such rail or barrier would show such neglect of duty on their part, as would authorize the plaintiffs to maintain these actions, so far as this objection is interposed, if, in the opinion of the jury, such a barrier as would be required for ordinary travel would have prevented the happening of the injury complained of by the plaintiff. If, on the other hand, a barrier suitable for ordinary travel, and of such character as would have protected the town from an indictment, would not have prevented the injury, then the plaintiff ought not to recover.

The further question, which seems also to be presented upon this report, whether, in case of an injury received while travelling upon a public way shown to be defective, but where the accident or injury is attributable in part to a defect in the carriage or harness, but occurring under such circumstances

as show that the plaintiff was chargeable with no fault or negligence in the matter, the town is liable for the damage, is one not free from difficulty. Against maintaining such action, it is strongly urged, that the injury is not fairly imputable to the defect in the highway; and inasmuch as it has resulted, at least in part, from causes for which the town was not responsible, and over which it had no control, the town should not be chargeable with damages therefor. If the objection was, that the injury was caused by the combined effect of an obstruction or want of repair in the road, and the want of ordinary care, diligence, or skill on the part of the plaintiff, in reference to his harness, his horses, or his carriage, or the use of the road, it would be very clear that the plaintiff could not recover. He must be without fault in this respect; and if not so, although the highway be out of repair, the town is not liable. But is the like effect to follow, when there is a defect in the road, but the accident or injury is attributable in part to a defect in the carriage or harness, which defect was unknown to the plaintiff, and which was of such a character that it might have existed, and yet no fault or negligence be chargeable by reason thereof to the plaintiff? We should be slow to adopt or sanction any principles, in reference to this class of actions, that would in so many cases render the statute nugatory. If the circumstance, that some accident or casualty occurred, as the primary cause, and which, by reason of a defect in the road, and through their combined operation, caused the damage to the plaintiff, would deprive the party of recovering damages, the protection to the traveller would be very much restricted. It is the ordinary course of events, and consistent with a reasonable degree of prudence on the part of the traveller, that accidents will occur; horses may be frightened, the harness may break, a bolt or screw may be dropped. To guard against damage by such accidents, the law requires suitable railings and barriers, a proper width to the road, and whatever may be reasonably required for the safety of the traveller.

*It seems to us, that when the loss is the combined result*

of an accident and of the defect in the road, and the damage would not have been sustained but for the defect, although the primary cause be a pure accident, yet, if there be no fault or negligence on the part of the plaintiff, if the accident be one which common prudence and sagacity could not have foreseen and provided against, the town is liable. This doctrine in no respect conflicts with the well settled rule requiring the plaintiff to use ordinary care and diligence, and that, without showing this, he cannot recover, though the road be defective, and the damage be occasioned by the combined effect of a defective road and want of care and skill in avoiding the injury.

I think the view thus presented, as to this last point of inquiry, to be entirely in accordance with that taken by this court in the case of *Howard* v. *North Bridgewater,* above cited. That case, like the present, was a case where damages were claimed for an injury, the primary cause of which was a pure accident. The bolt by which the whippletree was fastened to the cross-piece came out, and the whippletree falling upon the legs of the horse, he was frightened and broke from the harness, and ran with great violence upon large loose stones which lay within the limits of the road, but without the travelled path. The opinion of the court was, that, notwithstanding the primary cause was a pure accident arising from a defect in the plaintiff's carriage, and the damage was occasioned by an obstruction without the travelled road, yet the plaintiff ought to recover, if the jury found the road was defective and out of repair by reason of permitting such stones to remain there. The only difficulty in the way of the plaintiff's recovering there was, that the road was not found to be defective and out of repair. In the present case, on a further trial, if no defect should be found to have existed in this highway, the plaintiffs would fail to maintain their actions. But in the case as now stated and assumed, for the purpose of presenting the questions of law, the defect of the road and want of a barrier or railing, to constitute the road such a one as would exonerate the town from an indictment,

are assumed, and the rule of law now stated by the court is adopted upon the hypothesis, that the jury should find that the road was defective and unsafe for the purposes of public travel, by reason of the want of a railing or barrier.

The view which we have thus taken, upon the point last considered, has been sanctioned by the supreme court of Vermont, in the case of *Hunt v. Pownal*, 9 Verm. 418, where it was held, that if the road be out of repair, and the injury happen by reason of such want of repair, and the plaintiff is himself guilty of no want of care and prudence, the town is liable, notwithstanding the primary cause of the injury be the failure of a nut or bolt, which was insufficient or improperly fastened. That case has many features in common with the present, and is distinctly in point.*

Some reliance was placed by the defendants' counsel upon the case of *Farnum v. Concord*, 2 N. H. 392, as a decision favorable to them. In our view, the defence there was well maintained, upon the ground that the plaintiff was not using ordinary care and prudence to avoid the exposure to injury; he well knowing that the road was overflowed with water, and that an attempt to pass on it must be dangerous. The language used there and elsewhere, "that the loss must be produced directly by the defect in the highway," may be entirely correct when taken in connection with the defence of want of care, skill and diligence on the part of the plaintiff, and where the loss is produced by the combined result of such causes with a defect in the road. But where these dc not exist, and the primary cause is a pure casualty, happening without the least fault or negligence on the part of the plaintiff, and, in consequence of the defect or want of repair, an

---

* The Rev. Sts. of Vermont, *c.* 21, § 26, provide, that "If any special damage shall happen to any person, his team, carriage, or other property, by means of the insufficiency or want of repairs of any highway or bridge in any town, which such town is liable to keep in repair, the person sustaining such damage shall have right to recover the same in an action on the case, in any court proper to try the same." The statute in force when the case above cited was decided was substantially the same.

injury is sustained which might otherwise have been avoided, the principle can have no application beyond what is embraced in the rule of law already stated, as the opinion of this court, and that which is to govern the present case.